IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN HORTON,

      Plaintiff,

v.                                                                                                     No. 1:22-cv-00316-SCY

NAVAJO TECHNICAL UNIVERSITY and
LUCAS B. BABYCOS,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO PROCEED IN FORMA PAUPERIS
AND
ORDER TO SHOW CAUSE**

**THIS MATTER** comes before the Court on:

(i)     *Pro se* Plaintiff's Complaint for Breach of Contracts and Civil RICO, Doc. 1, filed April 26, 2022 ("Complaint");

(ii)    Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form), Doc. 2, filed April 26, 2022 ("Short Form Application"); and

(iii)   Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), Doc. 5, filed May 9, 2022 ("Long Form Application").

**Application to Proceed *in forma pauperis***

Plaintiff filed a Short Form Application to proceed *in forma pauperis*. *See* Doc. 2, filed April 26, 2022. The Court ordered Plaintiff to file a Long Form Application to proceed *in forma pauperis* because the Short Form Application does not provide sufficient information for the Court to determine whether a plaintiff is unable to pay the required fees. *See* Order to Cure Deficiency, Doc. 4, filed April 27, 2022. Plaintiff subsequently filed a Long Form Application. *See* Doc. 5, filed May 9, 2022. Because the Court is granting Plaintiff's Long Form Application, the Court denies Plaintiff's Short Form Application as moot.

The statute for proceedings *in forma pauperis*, 28 U.S.C. § 1915(a), provides that the Court may authorize the commencement of any suit without prepayment of fees by a person who submits an affidavit that includes a statement of all assets the person possesses and that the person is unable to pay such fees.

> When a district court receives an application for leave to proceed in forma pauperis, it should examine the papers and determine if the requirements of [28 U.S.C.] § 1915(a) are satisfied. If they are, leave should be granted. Thereafter, if the court finds that the allegations of poverty are untrue or that the action is frivolous or malicious, it may dismiss the case[.]

*Menefee v. Werholtz*, 368 Fed.Appx. 879, 884 (10th Cir. 2010) (citing *Ragan v. Cox*, 305 F.2d 58, 60 (10th Cir. 1962). "The statute [allowing a litigant to proceed *in forma pauperis*] was intended for the benefit of those too poor to pay or give security for costs...." *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 344 (1948). While a litigant need not be "absolutely destitute," "an affidavit is sufficient which states that one cannot because of his poverty pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." *Id.* at 339.

The Court grants Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs. Plaintiff signed an affidavit stating he is unable to pay the costs of these proceedings and provided the following information: (i) Plaintiff's average monthly income during the past 12 months was $0.00; (ii) Plaintiff has no cash and no money in bank accounts; (iii) Plaintiff has been unemployed since April 2020; and (iv) Plaintiff is "currently living on the street and eating at the soup kitchen." The Court finds that Plaintiff is unable to pay the costs of this proceeding because he signed an affidavit stating he is unable to pay the costs of these proceedings and because he has no income.

**Claims against Defendant Navajo Technical University**

In March 2020, Plaintiff entered into an employment contract with Defendant Navajo

Technical University ("NTU") which provided Plaintiff with a faculty/staff apartment. *See* Complaint at 3, ¶ 7. Plaintiff alleges that Defendant NTU: (i) subjected Plaintiff to "a two week quarantine and false imprisonment in his apartment which was not part of the contract;" (ii) authorized Plaintiff "one meal per day from the NTU cafeteria which was to be delivered by the NTU Police Department [but] was either never provided or came at [various] times throughout the morning and afternoon;" (iii) allowed "dozens of feral and faculty/staff owned dogs ... to run wild on campus and attack pedestrians;" (iv) "faculty/staff never removed the dog feces which was allowed to desiccate, pulverize and then blow into the wind forcing the plaintiff to breath the dog feces;" and (v) "breach[ed] the plaintiff's employment contract and fired the plaintiff to save money [because no classes were in session] under the pretext that the plaintiff had complained about being attacked by the campus dog population and the plaintiff not receiving at all his one meal per day or receiving the one meal per day at sporadic times." Complaint at 3-4, ¶ 7.

Plaintiff asserts the following claims against Defendant NTU: (i) breach of the employment contract; (ii) "false imprisonment by requiring the plaintiff to stay locked in his apartment 24/7 for 2 weeks;" (iii) "fraudulent inducement to have the plaintiff travel at his own expense from Oklahoma to New Mexico when the defendant NTU was in the process of shutting down the NTU campus due to COVID;" and (iv) "civil RICO by bribing or otherwise influencing defendant Babycos to drop the plaintiff as a retained client in his breach of employment contract suit against the defendant NTU." Complaint at 6-7, ¶ 9.

It does not appear that the Court has jurisdiction over Plaintiff's claims against Defendant NTU which "is a tribal institution of higher education." Complaint at 2, ¶ 4.

> As sovereign powers, Indian tribes are immune from suit absent congressional abrogation or clear waiver by the tribe. *Kiowa Tribe,* 523 U.S. at 753, 118 S.Ct. 1700. "Tribal immunity extends to subdivisions of a tribe, and even bars suits arising from a tribe's commercial activities." *Native Am. Distrib. v. Seneca–Cayuga Tobacco Co.,* 546 F.3d 1288, 1292 (10th Cir.2008) (citing *Kiowa Tribe,* 523 U.S. at 759, 118 S.Ct. 1700).

3

*Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1148 (10th Cir. 2012). The employment contract between Plaintiff and Defendant NTU states: "Nothing in this Employment Contract shall be deemed to constitute a waiver, express or implied, of the sovereign immunity of the Navajo Nation applicable to the University as the Navajo Nation's wholly owned university." Complaint at 11, ¶ 12. There are no allegations in the Complaint indicating that Congress abrogated the Navajo Nation's sovereign immunity from suits such as this action.

**Claims against Defendant Babycos**

In May 2020, Plaintiff entered into a contract with Defendant Babycos, an attorney, "to bring a cause of action against the defendant NTU ... for breach of contract and related issues and to pursue the matter to final judgment or settlement." Complaint at 5, ¶ 8. Plaintiff alleges that Defendant Babycos "does not appear to have ever pursued the matter past the initial filing stage." Complaint at 6, ¶ 8. Plaintiff also alleges:

> Defendants Babycos and NTU appear to have entered into a RICO conspiracy whereby Babycos would "slow walk" this case through the tribal or other court system of competent jurisdiction in the hope of running out the statute of limitations in favor of NTU in exchange for which NTU would pay Babycos a bribe.

Complaint at 6, ¶ 8.

Plaintiff asserts the following claims against Defendant Babycos: (i) "breach of the attorney retainer contract between the plaintiff and defendant Babycos;" and (ii) "civil RICO for accepting bribes or other valuable consideration from defendant NTU so that defendant Babycos would drop the plaintiff as a retained client in his breach of employment contract suit against the defendant NTU." Complaint at 7, ¶ 10.

The attorney retainer contract between Plaintiff and Defendant Babycos states: "If a dispute arises between the Firm and Client regarding ... the services provided in the engagement, the parties agree to resolve that dispute through mediation followed by arbitration through AAA."

Complaint at 14, ¶ 12.   The Complaint does not indicate whether Plaintiff and Defendant Babycos attempted to resolve Plaintiff's dispute through mediation and arbitration.

It appears that a stay of proceedings on Plaintiff's claims against Defendant Babycos may be warranted to save time and effort for the Court and the Parties and to conform to the Parties's arbitration agreement in the attorney retainer contract between Plaintiff and Defendant Babycos, which may be subject to the Federal Arbitration Act ("FAA").

> [The] "'principal purpose' [of the FAA] ... is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). "This purpose is readily apparent from the FAA's text." *Id.* And it "reflects the overarching principle that arbitration is a matter of contract." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013). Moreover, part of the parties' arbitration contract is their "bargain[ ] for the arbitrator's construction of their agreement." *Oxford Health Plans*, 569 U.S. at 569, 133 S.Ct. 2064 (quoting *E. Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000)). In striking that bargain, the parties "trade[ ] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

*Mid Atlantic Capital Corp. v. Bien*, 956 F.3d 1182, 1192-93 (10th Cir. 2020).   The FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.   While no party in this case has filed a motion to stay proceedings pursuant to the FAA, the Court has inherent power to stay proceedings to control its docket, conserve judicial resources, and provide for just determination of cases pending before it.   *See Baca v. Berry*, 806 F.3d 1262, 1269-70 (10th Cir. 2015) ("[i]t is well settled that the district court has the power to

stay proceedings pending before it and to control its docket for the purpose of economy of time and effort for itself, for counsel, and for litigants").

The Complaint fails to state a claim for a civil remedy pursuant to the Racketeer Influenced and Corrupt Organizations statutes.

> To bring a civil RICO claim, a plaintiff must allege that he was "injured in his business or property" by the RICO violation. *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). A RICO violation requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (footnote omitted). A pattern of racketeering activity requires at least two acts of racketeering activity. *See* 18 U.S.C. § 1961(5). The RICO statute lists a number of crimes that constitute racketeering activity. *See id.* § 1961(1).

*Dummar v. Lummis*, 543 F.3d 614, 620-21 (10th Cir. 2008).   Plaintiff has not alleged that he was injured in his business or property.   See 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of the chapter may sue ... and recover threefold the damages he sustains and the cost of the suit").   Nor has Plaintiff alleged a pattern of racketeering activity.

**Case Management**

> Generally, *pro se* litigants are held to the same standards of professional responsibility as trained attorneys.   It is a *pro se* litigant's responsibility to become familiar with and to comply with the *Federal Rules of Civil Procedure* and the *Local Rules of the United States District Court for the District of New Mexico* (the "Local Rules").

Guide for Pro Se Litigants at 4, United States District Court, District of New Mexico (November 2019).   The Local Rules, the Guide for Pro Se Litigants and a link to the Federal Rules of Civil Procedure are available on the Court's website:   http://www.nmd.uscourts.gov.

**Compliance with Rule 11**

The Court reminds Plaintiff of his obligations pursuant to Rule 11 of the Federal Rules of Civil Procedure.   *See Yang v. Archuleta*, 525 F.3d 925, 927 n. 1 (10th Cir. 2008) ("*Pro se* status does not excuse the obligation of any litigant to comply with the fundamental requirements of

the Federal Rules of Civil and Appellate Procedure."). Rule 11(b) provides:

> **Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Failure to comply with the requirements of Rule 11 may subject Plaintiff to sanctions, including monetary penalties and nonmonetary directives. *See* Fed. R. Civ. P. 11(c).

**IT IS ORDERED** that:

(i) Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form), Doc. 5, filed May 9, 2022, is **GRANTED.**

(ii) Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form), Doc. 2, filed April 26, 2022, is **DENIED.**

(iii) Plaintiff shall, within 21 days of entry of this Order, show cause why the Court should not dismiss the claims against Defendant Navajo Technical University for lack of jurisdiction. If Plaintiff asserts that the Court has jurisdiction over his claims against Defendant Navajo Technical University, Plaintiff shall, within 21 days of entry of this Order, file an amended complaint that alleges facts supporting jurisdiction. Failure to timely show cause and file an amended complaint may

result in dismissal of this case.

(iv) Plaintiff shall, within 21 days of entry of this Order, show cause why the Court should not stay proceedings on Plaintiff's claims against Defendant Babycos. If Plaintiff asserts that proceedings on Plaintiff's claims against Defendant Babycos should not be stayed, Plaintiff shall, within 21 days of entry of this Order, file an amended complaint alleging facts supporting Plaintiff's assertion that the proceedings on Plaintiff's claims against Defendant Babycos should not be stayed. Failure to timely show cause and file an amended complaint may result in the Court staying the proceedings on Plaintiff's claims against Defendant Babycos.

*Steve Yarbrough*
**UNITED STATES MAGISTRATE JUDGE**